FILED
SUPERIOR COURT
OF GUAM

2021 SEP 20 PM 7: 15

CLERK OF COURT

By:_____

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. CF0096-21 |
| | GPD Case No.: 21-04108/21-04369 |
| vs. | |
| RANDY JUNIOR CHACO NAUTA | |
| (aka Randy Junior Nauta) | DECISION AND ORDER RE. |
| DOB: 11/21/1986 | DEFENDANTS' MOTION TO |
| | DISMISS WITH PREJUDICE |
| | PURSUANT TO GUAM'S |
| ANTHONY VINCENT IGNACIO | CASTLE DOCTRINE |
| (aka Anthony Vincent Chargualaf Ignacio | |
| aka Tony; aka Ton) | |
| DOB: 11/02/1984 | |

## I.    INTRODUCTION

This matter is before the Honorable Maria T. Cenzon on Defendants' Joint Motion to Dismiss with Prejudice Pursuant to 9 GCA §§ 7.112 & 7.113 Guam's Castle Doctrine. Alternate Public Defender Peter Santos appeared on behalf of Defendant Randy Junior Chaco Nauta ("Nauta" or "Defendant Nauta"). Attorney Randall Cunliffe was present on behalf of Defendant Anthony Vincent Ignacio ("Ignacio" or "Defendant Ignacio"). Assistant Attorney General Sean Brown represented the People of Guam.

Upon consideration of the parties' oral arguments during the Motion Hearing, a review of the evidence submitted during the hearing, and analysis of applicable legal authority, the Court now issues this Decision and Order ruling on the Motion and DENYING Defendant's

MOTION TO DISMISS WITH PREJUDICE PURSUANT TO 9 GCA §§ 7.112 & 7.113 GUAM'S CASTLE DOCTRINE, for the reasons set forth herein.

## II.    BACKGROUND AND FACTS

Defendants Randy Junior Chaco Nauta ("Nauta") and Anthony Vincent Ignacio ("Ignacio") were indicted on February 25, 2021, of the following charges:

Against Nauta:

1.    Attempted Murder (As a 1st Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony;
2.    Aggravated Assault (As a 2nd Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony;
3.    Aggravated Assault (As a 3rd Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony;
4.    Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony);

Against Ignacio:

5.    Attempted Murder by Complicity (As a 1st Degree Felony);
6.    Aggravated Assault by Complicity (As a 2nd Degree Felony); and
7.    Aggravated Assault by Complicity (As a 3rd Degree Felony).

Nauta asserted his Sixth Amendment Right to Speedy Trial on March 5, 2021 at his arraignment. Ignacio has waived his right to speedy trial.

The charges against Defendants arise out of an altercation that took place on or about February 16, 2021, in which Nauta allegedly shot the alleged victim, Jesse Quidachay ("Quidachay"), with a shotgun while Ignacio operated the vehicle and drove them away. Magistrate's Complaint (Feb. 16, 2021). Prior to the altercation, text messages between Ignacio and Quidachay were purportedly exchanged threatening one another. A witness to the altercation claimed to see Quidachay approach Ignacio's vehicle with a "black stick" and begin to hit the top and sides of the car with a stick. The witness then observed Nauta, who was the

passenger in the vehicle driven by Ignacio, exit the vehicle, walk to the rear of the vehicle, and then allegedly shoot Quidachay. See Declaration to Mag. Compl. pg. 3.

Nauta filed a Motion to Dismiss with Prejudice Pursuant to 9 GCA §§ 7.112 & 7.113 Guam's Castle Doctrine (the "Motion") on May 27, 2021, to which Ignacio filed a Joinder on June 1, 2021 ("Joinder"). The People of Guam (the "People") filed an Opposition to the Motion on June 1, 2021. Both defendants then filed a reply briefs to the People's Opposition on June 15, 2021. The Court vacated the Jury Selection and Trial in this matter scheduled for June 21, 2021 and heard oral arguments on the briefs in lieu of jury selection.

At the hearing, no witness testimony was presented. Instead, both parties submitted video surveillance of the scene of the incident from two vantage points. The source of the videos are purportedly from a home located on Tomas Rivera Street in Agat, Guam, from two locations where the cameras were posted. Neither video surveillance contains audio.

Nauta's alleges in his Motion that Ignacio and Quidachay had been involved in an ongoing dispute and that an individual named "Rick" was going to mediate between the two to attempt to resolve the matter. See Mot. to Dismiss p. 2. Nauta claims that upon arriving at Rick's house, on Tomas Rivera Street, which is a dead end, Rick instructed Ignacio and Nauta to wait by his house while he spoke to Quidachay who was waiting down the street. Ignacio repositioned his car to face outward, towards the entrance into the street. Several men holding weapons, including Quidachay, approached Nauta and Ignacio in the car and another individual parked a car in front of Ignacio's car so that he would be unable to drive away. He claims that one man was holding a pipe and that Quidachay was holding a pipe and a knife. Quidachay then began to aggressively strike Ignacio's vehicle with the pipe and attempted to remove

Ignacio from the vehicle. Nauta then allegedly exited the vehicle and used "some sort of weapon" to "shoot" Quidachay. Mot. to Dismiss at 3 (quotes in original). Nauta returned to Ignacio's car and claimed that Ignacio was forced to reverse the vehicle into an old Coke machine in order to be able to maneuver around the vehicle which had parked to block them in. See Mot. to Dismiss p. 2–3. During the Hearing on the Motion, the neighbor's surveillance footage was provided to the Court as evidence. See People's Exh. 1 and Nauta's Exh. A. No testimony to support Defendant's claims of self-defense was presented to the Court.

Nauta argues for the dismissal with prejudice of the First, Second, and Third Charges against him because he is immune from prosecution in the first instance under Guam's Castle Doctrine Act. Ignacio argues that the Fifth, Sixth, and Seventh Charges should be dismissed against him on the same grounds.

## III. LEGAL DISCUSSION AND ANALYSIS

The question of whether a defendant is immune from prosecution under Guam's Castle Doctrine Act is one of first impression in Guam. The Guam Supreme Court has as of yet only addressed the issue of what constitutes "habitable property" under the statutory scheme in *People v. John*, 2016 Guam 41. Thus, the Court looks first to the language of the statute for guidance in making its determination. The cardinal rule of statutory construction is that courts must look first to the language of the statute itself. Absent clear legislative intent to the contrary, the plain meaning of the statute prevails. *People v. John*, 2016 Guam 41, ¶ 55 (quoting *People v. Camacho*, 2015 Guam 37 ¶ 31).

//

The primary question presented to this Court is whether the Defendants are entitled to a dismissal of the Indictment based upon the following immunity provisions of Guam's Castle Doctrine statute, 9 GCA § 7.113 (emphasis added):

§ 7.113. Immunity from Criminal Prosecution and Civil Action.

(a) As used in this Section, the term criminal prosecution includes arresting, detaining in custody, and charging or prosecuting the defendant.

(b) A person who uses force as permitted in § 7.112 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, except when:

(1) the person against whom force was used is a law enforcement officer, as defined by public law, who was acting in the performance of his or her duties, and the officer identified himself or herself in accordance with applicable law; or

(2) the person using force knew or reasonably should have known that the person was a law enforcement officer; or

(3) the use of force is found to be unlawful or was found to have been exercised with any illegal activity.

(c) A law enforcement agency shall use standard procedures for investigating the use of force as described in Subsection (b), but the agency may not arrest the person for using force *unless it determines that there is probable cause that the force that was used was unlawful*.

(d) The court shall award reasonable attorney's fees, court costs, compensation for loss of income, and all expenses incurred by the defendant in defense of any civil action brought by a plaintiff if the court finds that the defendant is immune from prosecution as provided in Subsection (b).

When a defendant challenges an indictment by invoking the immunity provisions of Section 7.113 of the Guam Castle Doctrine Act in a pre-trial motion, the Guam statute unfortunately does not specify the procedure by which the court may implement such

immunity, but only requires that the law enforcement agency investigating such use of force may not arrest such person "unless it determines that there is *probable cause* that the force that was used was unlawful." 9 GCA § 7.113(c) (emphasis added). This Court's primary concern in proceeding upon the Defendants' joint motion to dismiss based upon the immunity provisions of Guam's Castle Doctrine Act is that such a determination could conceivably require it to conduct a mini-trial on one or more of the essential elements of the crime (e.g., no privilege to act in self-defense), thus removing these elements from the consideration and deliberation of the jury. There is nothing in Guam's Castle Doctrine Act or in its codified legislative intent which would eliminate this constitutional right to a jury determination on these material issues.[1] Moreover, the Guam Supreme Court has not been called upon to decide these issues. As such, this Court proceeds cautiously, looks to the law of other jurisdictions deciding upon similar statutes, and finds invaluable guidance in the cases decided in jurisdictions with identical immunity provisions.

## A. **Kentucky Supreme Court cases are instructive**.

The Guam Supreme Court has not ruled on the issue of the pre-trial implementation of the immunity provisions of the Guam Castle Doctrine Act; therefore, the Court looks to the treatment of similar immunity provisions in other jurisdictions. The Court finds case law from

---

[1] 9 GCA § 7.111. Legislative Findings and Intent. *I Liheslaturan Guåhan* finds that it is proper for law-abiding people to protect themselves, their families, and others from intruders and attackers without fear of prosecution or civil action from acting in defense of themselves and others. *I Liheslatura* further finds that the "Castle Doctrine" is a common-law doctrine of ancient origins that declares that a person's home is his or her castle. *I Liheslatura* further finds that persons residing in or visiting Guam have a right to remain safe. Therefore, it is the intent of *I Liheslatura* that no person or victim of crime should be required to surrender his or her personal safety to a criminal, nor should a person or victim be required to needlessly retreat in the face of intrusion or attack.

Kentucky particularly instructive on the procedural and substantive applications of the immunity protections from prosecution under the Castle Doctrine Act.[2]

Kentucky's immunity statute provides as follows:

503.085 Justification and criminal and civil immunity for use of permitted force; exceptions.

(1) A person who uses force as permitted in KRS 503.050, 503.055, 503.070, and 503.080 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, unless the person against whom the force was used is a peace officer, as defined in KRS 446.010, who was acting in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law, or the person using force knew or reasonably should have known that the person was a peace officer. As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.

(2) A law enforcement agency may use standard procedures for investigating the use of force as described in subsection (1) of this section, but the agency may not arrest the person for using force unless it determines that there is probable cause that the force that was used was unlawful.

(3) The court shall award reasonable attorney's fees, court costs, compensation for loss of income, and all expenses incurred by the defendant in defense of any civil action brought by a plaintiff, if the court finds that the defendant is immune from prosecution as provided in subsection (1) of this section.

Ky. Rev. Stat. Ann. § 503.085 (West 2021)(emphasis added).[3]

---

[2] Although the Guam Supreme Court found, in 2016, that Guam's Castle Doctrine Act "closely resembled the language from the Florida version," *People of Guam v. Xo Isi John,* 2016 Guam 41 at ¶ 61 (Dec. 30, 2016), the Court has reviewed Florida's immunity provisions, which differ significantly from Guam's following several later amendments to both Guam and Florida law. Additionally, this Court notes that, until the statute was amended, the burden of proof in "Stand Your Ground" cases in Florida when immunity provisions are invoked required a *defendant* to establish that he was entitled to invoke the immunity defense as a bar to prosecution. Florida's immunity provisions, FL St § 776.032, as amended, while now applying a "probable cause" standard to the "law enforcement agencies," contains provisions markedly different from Guam's. The Guam Supreme Court also noted differences in Florida's "Stand Your Ground" laws particularly with respect to what constitutes a "dwelling."

In *Rogers v. Commonwealth of Kentucky*, 285 S.W.3d 740 (Ky. 2009), the Kentucky Supreme Court acknowledged that the state legislation providing immunity from criminal prosecution under a self-defense statute was silent as to the process by which a court would make a determination that probable case did not support a claim of justified force. The Kentucky Supreme Court ruled that the applicable law did not provide a statutory right to an evidentiary hearing for a defendant seeking immunity under the statutory scheme, but only required that in response to a motion to dismiss or for immunity, the prosecution is required to satisfy its burden of establishing probable cause that the defendant's use of force was not justified "by directing the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record." *Rodgers v. Com.*, 285 S.W.3d 740, 755 (Ky. 2009).

The Kentucky Supreme Court also noted the trial court's tentativeness in implementing the state's immunity provision due to the lack of statutory guidance in KRS 503.085(2) (which is identical to Guam's Section 7.113(c)), but issued the following interpretation of the law and directed the Kentucky trial courts as follows:

> The trial judge's uncertainty regarding how to implement the immunity provision is understandable because the statute offers little guidance. Indeed, the only express indication of legislative intent is in KRS 503.085(2) which provides that immunity must be granted pre-arrest by the law enforcement agency investigating the crime unless there is "probable cause that the force used was unlawful." Because the statute defines the "criminal prosecution" from which a defendant justifiably acting in self-defense is immune to be "arresting, detaining in custody and charging or prosecuting," we can infer that the immunity determination is not confined to law enforcement personnel. **Instead,**

---

[3] It is imperative to note that one significant provision noticeably absent from the exceptions to immunity in the Kentucky law is that "the use of force is found to be unlawful or was found to have been exercised with any illegal activity," which is contained in 9 GCA § 7.113(b)(3).

**the statute contemplates that the prosecutor and the courts may also be called upon to determine whether a particular defendant is entitled to KRS 503.085 immunity. Regardless of who is addressing the immunity claim, we infer from the statute that the controlling standard of proof remains "probable cause." Thus, in order for the prosecutor to bring charges or seek an indictment, there must be probable cause to conclude that the force used by the defendant was not fully justified** under the controlling provision or provisions of KRS Chapter 503. **Similarly, once the matter is before a judge, if the defendant claims immunity the court must dismiss the case unless there is probable cause to conclude that the force used was not legally justified.**

*Rodgers v. Com.,* 285 S.W.3d at 754 (emphasis added). The defendant in *Rodgers* then argued that he is entitled, as a matter of statutory right, to an evidentiary hearing "at which the defendant may counter probable cause with proof 'by a preponderance of the evidence' that the force was justified.'" *Id.* Rejecting the defendant's demand for an evidentiary hearing whereby a defendant may counter probable cause with such proof by a preponderance of the evidence, the *Rodgers* court noted differences between the Colorado law on which the defendant's evidentiary hearing argument was based, the probable cause standard expressly provided for in its statute and upon the statute's strong preference for jury determinations in criminal matters.

Finding additional significant reasons for ruling that an evidentiary hearing was not required in immunity cases, the Kentucky Court then directed the process by which trial courts were to make its determinations of immunity under the statute, and reasoned as follows:

> The sole remaining issue is how the trial courts should proceed in determining probable cause. The burden is on the Commonwealth to establish probable cause and it may do so by directing the court's attention to the evidence of record including witness statements, investigative letters prepared by law enforcement officers, photographs and other documents of record. Although Rodgers advocates an evidentiary hearing at which the defendant may counter probable

cause with proof "by a preponderance of the evidence" that the force was justified, this concept finds no support in the statute. **The legislature did not delineate an evidentiary hearing and the only standard of proof against which a defendant's conduct must be measured is the aforementioned probable cause. We decline to create a hearing right that the statute does not recognize and note that there are several compelling reasons for our conclusion**.

First, the pretrial evidentiary hearings that are currently conducted, such as suppression hearings, do not involve proof that is the essence of the crime charged but focus instead on issues such as protection of the defendant's right to be free from unreasonable searches and seizures, right to be represented by counsel and right to Miranda warnings prior to giving a statement. Similarly, a competency hearing addresses the state of the defendant's mental health and his ability to participate meaningfully in the trial. **Neither of these hearings requires proof of the facts surrounding the alleged crime. An evidentiary hearing on immunity, by contrast, would involve the same witnesses and same proof to be adduced at the eventual trial, in essence a mini-trial and thus a process fraught with potential for abuse.** Moreover, it would result in one of the elements of the alleged crime (no privilege to act in self-protection) being determined in a bench trial. In *RCr 9.26* this Court has evinced its strong preference for jury trials on all elements of a criminal case by providing specifically that even if a defendant waives a jury trial in writing, the court and the Commonwealth must consent to a bench trial. Thus, where probable cause exists in criminal matters the longstanding practice and policy has been to submit those matters to a jury and we find no rational basis for abandoning that stance.

*Rodgers v. Com.*, 285 S.W.3d 740, 755 (emphasis added).

The Kentucky Supreme Court's rationale for refusing to require trial courts to conduct an evidentiary hearing in order to determine whether to dismiss an indictment based upon an immunity statute addresses this Court's concerns about potentially adjudicating an issue that should be properly before a jury – assuming the People have satisfied its burden of proof under 7.113(b). Unlike unlawful search and seizure motions seeking to suppress evidence or competency proceedings which do not require the court to make a finding of proof about an essential element of the offense, by their joint motion to dismiss, the Defendants in the instant

case seek an affirmative ruling by this Court that their actions were justified, or not justified. The Court finds that this is not dictated by the Guam statute and, indeed, flies in the face of a preference for jury trials in criminal matters.

Like the immunity provisions in *Rogers,* the Castle Doctrine Act merely requires the prosecution to satisfy its burden of proof of probable cause that the actions of the defendants were not justified. If the Court finds that the People have satisfied its burden, the inquiry ends there, and a defendant is not entitled to counter probable cause by a showing by a preponderance of the evidence that the act was justified. However, if the People fail to satisfy its burden of probable cause, then the Court must grant immunity.

### B. The Court Considers the Matters On the Record Before It in Determining Whether the Prosecution Satisfied its Burden of Proof of Probable Cause.

In considering Defendants' motion to dismiss and whether the People have satisfied its burden of proof of probable cause, the Court must first define "probable cause." Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). Probable cause in the context of the burden of proof attributed to the People in an immunity determination can be defined as "'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.' The court must consider the totality of the circumstances to determine whether probable cause exists to conclude that a defendant's use of force was unlawful." *Taylor v. Commonwealth,* 567 S.W.3d 610, 612 (Ky. Ct. App. 2018)(quoting *Commonwealth v. Jones,* 217 S.W.3d 190, 200 (Ky.

2006) (Scott, J., dissenting)(quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

The evidence on the record consists of video-surveillance footage of the incident submitted by both the People and by Defendant Nauta. No witnesses were called to testify, although counsels were permitted to argue.[4] The videos provided two different vantage points: one submitted by the People as Exhibit 1, which provided a direct view of the incident, and the other, submitted by Defendant Nauta as Exhibit A, provided a view from a few feet further up the street and showed the victim shortly before the incident as well as the Defendants' leaving the scene.

The Court finds that the videos jointly show the Defendants on Tomas Rivera Street in Agat, Guam, and that Defendant Ignacio was driving the vehicle while Defendant Nauta was in the passenger seat. Defendants were parked on this street for approximately eight (8) minutes before the victim appears on the street and stops to speak to an occupant of a sedan which is a few feet away from but which is facing the Defendants' vehicle. Defendant's Exhibit A. At the time, the victim did not appear to have any object other than a cell phone in his hand. A few minutes later, the victim is seen moving in the direction of the Defendants' vehicle. People's Exhibit 1 shows that the victim approaches the Defendants' vehicle and hits it with his hand while holding a stick in his other hand. No knife is visible in Quidachay's hand. Defendant Ignacio reverses the vehicle while simultaneously waving his arms out of the

---

[4] Although the Court heard oral arguments on the Defendants' joint motion to dismiss and did not deny any request, should there have been one, to present testimony at the hearing, the Court agrees with the Kentucky Court's interpretation of the law: that the Castle Doctrine Act provisions to not provide a statutory right of evidentiary hearing to a defendant seeking immunity from prosecution under that Act.

window, striking the victim. When the vehicle comes to a stop, Defendant Nauta exhits the vehicle, runs behind it and appears to be holding a shotgun in the direction of the victim. The victim is seen stumbling and is out of view of the camera. Defendant Nauta re-enters the vehicle and the Defendants drive away. There is no vehicle blocking their path of egress from the street. There is no audio on either video.

"Probable cause" also requires that the court consider the "totality of the circumstances" in determining whether defendant's use of force in this instance was unlawful. *Rogers,* 285 S.W.3d at 754-55. In reviewing the totality of the circumstances as evidenced in the video and as set forth in Defendants' moving papers, the Court considers whether a 'reasonably prudent person' would have used same force against victim as the Defendant did in this case. Under the circumstances, the Defendants placed themselves on Tomas Rivera Street in Agat, Guam, and waited for Quidachay to appear. This circumstances alone does not undermine their defense; however, the actions of the Defendants belie their claim that they were there to resolve and mediate the differences between Ignacio and Quidachay and not for an unlawful purpose. One of the most important factors that the Court considers is that the Defendants had in their possession what appears in the video to have been a shotgun, which Nauta then used on Quidachay after Nauta alighted from the vehicle. The Court finds that a reasonably prudent person would not have brought a shotgun (or "some sort of weapon to 'shoot,'" as defendant disingenuously describes the object used against Quidachay) to a mediation. Moreover, the video alone does not appear to establish that Quidachay's actions in hitting the vehicle with his fist and a stick also support a finding by this Court that he attempted to enter the vehicle.

For these reasons, the Court finds that the People have satisfied its burden of proof of probable cause in establishing that the Defendants' acts were not justified for the purpose of immunity under the Castle Doctrine Act.

**C. The Grand Jury Found Sufficient Probable Case to Charge the Defendants.**

Although the Court need not consider any other factors in making its determination on the Defendants' motion, the Court notes that Section 7.113(c) places the burden on a law enforcement agency, which includes the Prosecution, to establish probable cause that the force that Defendants employed was unlawful. While the Court does not give deference to the People in making its determination in this instance, the Court notes that the Grand Jury found "reasonable cause" to charge the Defendants with the offenses which they now seek to dismiss and that neither Defendant has challenged the sufficiency of the indictment on this basis.

It is the role of the grand jury "to inquire into felonies and any related misdemeanors triable by the court." 8 GCA § 50.10. A defendant has the right to prosecution by indictment. 8 GCA § 45.30. An indictment is "[a]n accusation in writing, presented by the grand jury to a competent court, charging a person with a felony or a felony and a related misdemeanor." 8 GCA § 50.54(a). The grand jury shall find an indictment "when from the evidence presented, there is reasonable cause to believe that an indictable offense has been committed and that the defendant committed it." 8 GCA § 50.54(b).

The grand jury's role in the criminal justice system has been succinctly stated by the Guam Supreme Court in *People of Guam v. San Nicolas*, 2013 Guam 21 (Nov. 5, 2013), as follows:

A grand jury's chief duty is to determine whether the prosecution has established a prima facie case that a crime has been committed and that the accused committed it. See 38 Am. Jur. 2d Grand Jury § 2 (2013). Further, "a grand jury serves a gatekeeping function by considering the sufficiency of the evidence to support an indictment." Id. § 3. Title 8 GCA § 50.54, entitled "Form of Indictment: Standards for Indicting," provides:

(a) An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a felony or a felony and a related misdemeanor.

(b) The grand jury shall find an indictment when from the evidence presented there is reasonable cause to believe that an indictable offense has been committed and that the defendant committed it.

8 GCA § 50.54(a)-(b) (as amended by Guam Pub. L. 29–042:1 (Jan. 2, 2008)); *Guam v. San Nicolas*, 2013 Guam 21, ¶ 11 (Guam Nov. 5, 2013)(footnote omitted).

Importantly, the Guam Supreme Court has declared that the grand jury indictment serves two purposes: "it affirms that the grand jury found ***probable cause*** for the charges in the indictment, and it gives the defendant notice of the charges." Id. at ¶ 12 (emphasis added). As relevant here, neither of the Defendants raised any issues with respect to the finding of the grand jury of probable cause for the charges in the Indictment issued against them. Arguably, the grand jury determined from the evidence presented to it during the proceedings before it that there exists probable cause to bring the Defendants to trial on the charges set forth in the indictment.

Despite the grand jury determination of probable cause, the Court here has conducted its own inquiry into whether the People satisfied its burden to show that Defendants' actions were not lawful. Based upon the Court's independent determination of probable cause from

the evidence presented to it on the record on Defendants' motion to dismiss, the Court finds that the People have satisfied its burden.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that the People have satisfied its burden of proof of probable cause that the Defendants' actions were unlawful. Consequently, Defendants' joint motion to dismiss the Indictment is DENIED.

SEP 2 0 2021

SO ORDERED this _____ day of _____, 2021.

_____
HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam

SERVICE VIA E-MAIL
I acknowledge that an electronic copy of the original was e-mailed to:
AG, R. Cunliffe, APD
Date: 9/20/21 Time: 7:24 pm
Antonio A Cruz
Deputy Clerk Superior Court of Guam